UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
------------------------------ x
OSTERMAN & CO., INC.,             :
                                  :
          Plaintiff,              :
                                  :
v.                                :  Civil No. 3:22-cv-1494(AWT)
                                  :
THOMAS PIGNATELLO,                :
                                  :
          Defendant.              :
------------------------------ x
```

## ORDER RE MOTION TO AMEND COMPLAINT

For the reasons set forth below, the plaintiff's Motion to Amend Verified Complaint and Join Additional Party (ECF No. 26) is hereby DENIED.

Plaintiff Osterman & Company Inc. ("Osterman") moves for permission to file an amended complaint joining PolyQuest, Inc. ("PolyQuest") as a defendant. PolyQuest is the current employer of defendant Thomas Pignatello. Pignatello argues that the motion to amend should be denied because the facts alleged in the proposed amended complaint do not demonstrate that PolyQuest is subject to this court's jurisdiction under Connecticut's long-arm statute. The court agrees.

At this stage of this case, the plaintiff is only required to allege facts that make a prima facie showing that this court has jurisdiction over PolyQuest. See Lego A/S v. Best-Lock Const. Toys, Inc., 886 F. Supp. 2d 65, 72 (D. Conn. 2012) ("No

-1-

discovery has been conducted to date on this issue. In consequence, at this initial stage [plaintiff] need only allege facts constituting a prima facie showing of personal jurisdiction."). This prima facie showing requires "an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59 (2d Cir. 2012); see also Chirag v. MT Marida Marguerite Schiffahrts, 604 F. App'x 16, 19 (2d Cir. 2015) ("A prima facie [showing of personal jurisdiction] requires nonconclusory fact-specific allegations or evidence showing that activity that constitutes the basis of jurisdiction has taken place." (internal citations omitted)).

"A federal court sitting in Connecticut in diversity must rely on Connecticut's long-arm statutes in determining whether a sufficient basis exists for exercising personal jurisdiction over the nonresident defendants." Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156, at *6 (D. Conn. Mar. 26, 2008). This determination requires a two-part analysis: "First, a district court must determine whether, under the laws of the forum state ([Connecticut] in this case), there is jurisdiction over the defendant. Second, [it] must determine whether an exercise of jurisdiction under these laws is consistent with federal due

process requirements." <u>Grand River Enterprises Six Nations, Ltd.</u>
<u>v. Pryor</u>, 425 F.3d 158, 165 (2d Cir. 2005).

The parties agree that the relevant Connecticut long-arm
statute is Conn. Gen. Stat. § 33-929(f), which subjects foreign
corporations to personal jurisdiction in Connecticut under
certain circumstances. That statute provides:

> Every foreign corporation shall be subject to suit
> in this state, by a resident of this state or by a
> person having a usual place of business in this
> state, whether or not such foreign corporation is
> transacting or has transacted business in this
> state and whether or not it is engaged exclusively
> in interstate or foreign commerce, on any cause of
> action arising as follows: (1) Out of any contract
> made in this state or to be performed in this state;
> (2) out of any business solicited in this state by
> mail or otherwise if the corporation has repeatedly
> so solicited business, whether the orders or offers
> relating thereto were accepted within or without
> the state; (3) out of the production, manufacture
> or distribution of goods by such corporation with
> the reasonable expectation that such goods are to
> be used or consumed in this state and are so used
> or consumed, regardless of how or where the goods
> were produced, manufactured, marketed or sold or
> whether or not through the medium of independent
> contractors or dealers; or (4) out of tortious
> conduct in this state, whether arising out of
> repeated activity or single acts, and whether
> arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).

The proposed amended complaint alleges that "[t]his action
arises out of Pignatello's breach of his written employment
agreement with Osterman and PolyQuest knowingly procuring his
breach of said agreement." Pl.'s Proposed Am. V. Compl. at ¶ 1.

It alleges that "PolyQuest hired Pignatello while Pignatello lived in Connecticut . . . ." Id. at ¶ 7. The plaintiff also alleges that after learning of a meeting that Pignatello was going to have with Exxon, "Osterman through its counsel sent a letter advising him of the above restrictive covenants, advising him that it considered his setting up a meeting between Exxon and PolyQuest to be a violation of the Agreement, and requesting that he submit a sworn affidavit attesting to" certain facts. Id. at ¶ 31. "Osterman's counsel sent a similar letter and a copy of the Agreement through its counsel to PolyQuest's Chief Executive Officer, John J. Marinelli." Id. at ¶ 32. The plaintiff further alleges that "[o]n June 24, 2022, counsel for PolyQuest sent a letter to Osterman's counsel asserting that Pignatello had not and would not violate the Agreement." Id. at ¶ 33.

The proposed amended complaint adds PolyQuest as a defendant in Count IV, a claim for violation of the Connecticut Unfair Trade Practices Act and adds a parallel claim in Count V for violation of the North Carolina Unfair Trade Practices Act. It adds PolyQuest as a defendant in a claim for unjust enrichment in Count VII and in a claim for tortious interference with business relations in Count VIII.

Finally, the plaintiff adds as Count IX a claim against PolyQuest only for tortious interference with a contract. The allegations in Count IX read as follows:

> 87. PolyQuest knew of the Agreement between Osterman and Pignatello.
>
> 88. PolyQuest intentionally and improperly procured the breach of the Agreement between Osterman and Pignatello.
>
> 89. By such interference with the Agreement, PolyQuest has attempted to divert and has diverted business from Osterman and has otherwise impaired the business relationship between Osterman and one or more of its customers.
>
> 90. By the foregoing acts, PolyQuest has acted fraudulently, willfully, intentionally, maliciously and with the intent to harm Osterman.
>
> 91. As a direct and proximate result of PolyQuest's acts, Osterman has sustained irreparable harm and damage to its business.

Pl.'s Proposed Am. V. Compl. at ¶¶ at 87-91.

Clause (1) of Section 33-929(f) subjects a foreign corporation to suit on a cause of action arising out of any contract made in this state or to be performed in this state. Clause (1) does not confer jurisdiction over PolyQuest because it is not a party to the employment agreement out of which the plaintiff's claims arise. See Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156 at *7 (D. Conn. Mar. 26, 2008) ("The court cannot rely on the Letter of Intent to exercise long-arm jurisdiction under Section 33-929(f)(1) because C & B was not a

party to the letter and did not enter into any agreement with Halo."); Success Systems, Inc. v. CRS, Inc., 2023 WL 2742344 (D. Conn. Mar. 31, 2023) ("In analogous cases in which plaintiffs have attempted to establish jurisdiction over a defendant by referencing an agreement to which the defendant was not a party, courts have commonly found that [S]ection 33-929(f)(1) does not apply." (citing several cases)).

It is unclear whether the plaintiff is arguing that the court has jurisdiction over PolyQuest under clause (2) of Section 33-929(f), which subjects a foreign corporation to a suit on a cause of action arising out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business. In any event, the court does not have jurisdiction over PolyQuest pursuant to clause (2) because the proposed amended complaint does not assert any claims based on PolyQuest's solicitation of customers in Connecticut. See Halo Tech Holdings, Inc. v. Cooper, 2008 WL 877156 at *8 ("[T]he term 'solicited' in subsection (2) means solicitation of customers.")

It does not appear that the plaintiff contends that the court has jurisdiction over PolyQuest pursuant to clause (3) of Section 33-929(f), which subjects a foreign corporation to a suit on a cause of action arising out of the production, manufacture or distribution of goods by such corporation with

-6-

the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed.

Clause (4) of Section 33-929(f) subjects a foreign corporation to suit on a cause of action arising out of tortious conduct in this state. "Under the plain language of [Section] 33-929(f)(4), a court need only inquire as to the place where the tort occurred because 'the statute requires tortious *conduct in the state*.'" Amerbelle Corp. v. Hommell, 272 F. Supp. 2d 189, 194 (D.Conn. 2003) (emphasis in original). "Therefore, jurisdiction may be founded on [Section] 33-929(f)(4) only if the tortious conduct occurred in Connecticut, regardless of whether the injury was felt in Connecticut from tortious activity outside Connecticut." Id. See also General Star Indem. Co. v. Anheuser-Busch Companies, Inc., 1998 WL 774234 (D.Conn. Aug. 24, 1998) ("The statute clearly reads that the conduct which is alleged to be tortious must occur 'in this state.'" (quoting Bross Utilities Service Corp. v. Aboubshait, 489 F.Supp. 1366, 1373 (D.Conn. 1980))).

Here, none of the conduct which is alleged to be tortious occurred in the state of Connecticut. The proposed amended complaint alleges that PolyQuest hired Pignatello while he lived in Connecticut, but the hiring of Pignatello is not the allegedly tortious conduct. Rather, the allegedly tortious conduct is PolyQuest's action of intentionally and improperly

procuring the breach of the agreement between Osterman and
Pignatello, and this is not alleged to have occurred in
Connecticut.

The plaintiff asserts in its reply that "[m]ailing or
faxing a false representation into Connecticut constitutes
tortious conduct for the purposes of the long-arm statute."
Pl.'s Reply Re Mot. Amend (ECF No. 38) at 5 (quoting <u>Gulf
Underwriters Ins. Co. v. Hurd Ins. Agency, Inc.</u>, 2004 WL 1084718
(D.Conn. May 11, 2004) (citing <u>Adams v. Guthy Renker Corp.</u>, 106
F. Supp. 2d 400, 404 (D.Conn. 2000))). Here, the plaintiffs
appear to refer to the June 24, 2022 letter sent by PolyQuest to
Osterman's counsel stating that Pignatello "had not and would
not violate the Agreement." Pl.'s Proposed Am. V. Compl. at ¶
33. However, the letter from counsel for PolyQuest is not the
conduct alleged to be tortious. Paragraph  64  of the
plaintiff's proposed amended complaint alleges that:
"PolyQuest's conduct in knowingly permitting Pignatello to
divert business from Osterman in violation of his agreement
while representing through its attorney it was not doing so
constitutes unfair acts or practices in the conduct of trade or
commerce." Thus, the conduct alleged to be tortious is
permitting Pignatello to divert business from Osterman in
violation of the agreement. The reference to the representation

by PolyQuest's attorney goes to show that PolyQuest knew the alleged conduct was occuring.

The plaintiff contends that its position is supported by JKB Daira, Inc. v. OPS-Technology, LLC., 2022 WL 4484146 (D.Conn. September 27, 2022). However, the facts in that case are materially different. There, "[i]n 2012, JKB hired Tatsumi Fukasawa as its Manager of International Affairs. In 2015, Fukasawa was promoted to Vice President of International Affairs, a role he retained until 2020." JKB Daira, Inc. v. OPS-Technology, LLC., 2022 WL 4484146 at *1 (D.Conn. September 27, 2022) (internal citations omitted). "[W]ithout JKB's knowledge or approval, Fukasawa and [Nippon Aircraft Supply ("NAS")] entered into a written consulting contract, pursuant to which Fukasawa agreed to offer services to [NAS's] operation and business planning, etc., in order to contribute to the growth of [NAS]." Id. at *2 (internal quotation marks omitted). JKB alleged that "when NAS entered into the contract with Fukasawa, NAS knew that Fukasawa was employed by JKB, knew that JKB maintained a principal place of business in Norwalk, Connecticut, and knew that Fukasawa worked for JKB in Connecticut." Id. "In addition, JKB submits that Fuasawa performed the majority of his work for NAS from JKB's Connecticut office, using a desktop computer given to him by

JKB." Id. The court concluded that personal jurisdiction pursuant to Section 33-929(f)(4) was appropriate because:

> Here, JKB does not specifically plead that an agency relationship existed between NAS and Fukasawa. JKB does allege, however, that the consulting services contract between NAS and Fukasawa identified Fukasawa as an employee, that Fukasawa was paid a regular, quarterly fee by NAS, that he was permitted to use an email address with NAS's domain, and that he has business cards that identified him as a corporate advisor. Further, the complaint alleges that the actions Fukasawa took from Connecticut — sending NAS communications about JKB's customers and products in order to help NAS divert business opportunities — fell squarely within the scope of his employment duties with NAS. Although the extent to which NAS exercised control over Fukasawa's day-to-day activities is not entirely clear, those allegations are sufficient, in my view to demonstrate that Fukasawa acted as NAS's agent for purposes of the jurisdictional inquiry.
>
> JKB additionally alleges that Fukasawa committed tortious conduct within Connecticut, namely by sharing from Connecticut JKB's proprietary and confidential information with its competitor, and by assisting that competitor in diverting its business opportunities all in breach of the fiduciary duties he owed to JKB, his employer.

Id. at *8.

Finally, Osterman seeks to leave to conduct jurisdictional discovery. Osterman states that "further discovery is likely to reveal additional details about the representations made between Pignatello and PolyQuest when PolyQuest hired Pignatello while he resided in Connecticut. It may also reveal that Pignatello has solicited Connecticut customers of Osterman on behalf of PolyQuest." Pl.'s Reply Re Mot. Amend at 6-7. This is not sufficient to show that jurisdictional discovery is warranted.

The defendant notes that Osterman has had the benefit of his written discovery responses. <u>See</u> Def.'s Mem. L. Opp. Pl.'s Mot. Amend (ECF No. 36) at 16. However, notwithstanding that fact, Osterman has been unable to provide factual allegations that make a prima facie showing that the court has jurisdiction over PolyQuest pursuant to Section 33-929(f). Under these circumstances, it is not appropriate to bring PolyQuest into the case and impose upon it the burden of participating in jurisdictional discovery and then moving to dismiss the case for lack of personal jurisdiction. <u>See</u> <u>Wright v. Mahoney</u>, 2006 WL 8446825 at *5 (D.Conn. July 28, 2006)("Here there is simply no material before the court to suggest that any of the defendants purposely availed themselves of the benefits of the state – only conjecture . . . and this is simply insufficient to form a basis for jurisdiction.").

It is so ordered.

Dated this 31st day of July 2023, at Hartford, Connecticut.

/s/AWT
_____

Alvin W. Thompson
United States District Judge

-11-